IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIE ABERT, | ) |
| | ) Civil Action No. 2:12-cv-393 |
| Plaintiff, | ) |
| | ) Judge Mark R. Hornak |
| v. | ) Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) |
| REHABCARE GROUP INC., *et al.*, | ) ECF Nos. 20 & 28 |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

The Complaint (ECF No. 1) in this case was filed on or about March 28, 2012. This action was then referred to Chief United States Magistrate Judge Lisa Pupo Lenihan for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. §636(b)(1), and Local Rules of Court 72.C and 72.D.

The Chief Magistrate Judge's very thorough and complete Report and Recommendation (ECF No. 43), filed on February 22, 2013, recommended that the Motions to Dismiss filed by Defendants Greenery and Fundamental (ECF No. 20) and Defendant RehabCare (ECF No. 28) be granted with prejudice as to Plaintiff's claims for constructive discharge in Count I, hostile work environment (Count II), and retaliation (Count III). The Report and Recommendation further recommended that the Motions to Dismiss filed by Defendants Greenery and Fundamental (ECF No. 20) and Defendant RehabCare (ECF No. 28) be granted without prejudice as to Plaintiff's claim for failure to rehire in Count I, so long as Plaintiff elects to file a motion for leave to amend her Complaint as to the failure to rehire claim within 14 days of the district court's order upon *de novo* review of the Report and Recommendation. In the event Plaintiff elected to rest on the allegations in her original Complaint, then the Chief Magistrate

1

Judge recommended that the Motions to Dismiss the failure to rehire claim in Count I be granted with prejudice. In addition, the Report and Recommendation recommended that the Motion to Dismiss filed by Defendant RehabCare (ECF No. 28) be denied as to Plaintiff's claim for violation of the Crime Victims Employment Protection Act (Count IV). The Report and Recommendation further recommended that the Motions to Dismiss filed by Defendants Greenery and Fundamental (ECF No. 20) and Defendant RehabCare (ECF No. 28) be denied as to Plaintiff's claim for intentional infliction of emotional distress (Count V), and granted with prejudice as to Plaintiff's claim for negligent infliction of emotional distress (Count VI). Finally, the Report and Recommendation recommended that the Motion to Dismiss filed by Defendant RehabCare (ECF No. 28) be granted with prejudice as to Plaintiff's claim for wrongful discharge in violation of public policy (Count VIII).

Service was made on all counsel of record. The parties were informed that in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, that they had fourteen (14) days to file any objections. Upon motion of Plaintiff's counsel, an extension was granted until March 15, 2013 to file objections. Plaintiff filed Objections to the Report and Recommendation and a Brief in Support (ECF Nos. 46 and 47) on March 15, 2013. Defendants Responses to Plaintiff's Objections (ECF Nos. 48 and 49) on March 29, 2013.

After a *de novo* review of the pleadings and documents in the case, together with the Report and Recommendation, objections thereto, and Defendants' responses, the following Order is entered:

**AND NOW**, this 10th day of April, 2013,

**IT IS HEREBY ORDERED** that for the reasons set forth in this Memorandum Order, the Motions to Dismiss filed by Defendants Greenery and Fundamental (ECF No. 20) and Defendant RehabCare (ECF No. 28) are **DENIED** as to Plaintiff's claims for constructive discharge in Count I, and retaliation (Count III).

**IT IS ORDERED** that the Motions to Dismiss filed by Defendants Greenery and Fundamental (ECF No. 20) and Defendant RehabCare (ECF No. 28) are **GRANTED WITHOUT PREJUDICE** as to Plaintiff's claim for failure to rehire in Count I. Plaintiff is hereby given leave to file an Amended Complaint as to the failure to rehire claim within 14 days of this Order. Should she fail to do so, the Motion to Dismiss the claim for failure to rehire in Count I of the Complaint will be deemed as being **GRANTED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Defendant RehabCare (ECF No. 28) is **DENIED** as to Plaintiff's claim for violation of the Crime Victims Employment Protection Act (Count VI).

**IT IS FURTHER ORDERED** that the Motions to Dismiss filed by Defendants Greenery and Fundamental (ECF No. 20) and Defendant RehabCare (ECF No. 28) are **DENIED** as to Plaintiff's claim for intentional infliction of emotional distress (Count V), and **GRANTED WITH PREJUDICE** as to Plaintiff's claims for hostile work environment (Count II) and negligent infliction of emotional distress (Count VI).

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Defendant RehabCare (ECF No. 28) is **GRANTED WITH PREJUDICE** as to Plaintiff's claim for wrongful discharge in violation of public policy (Count VIII).

**IT IS FURTHER ORDERED** that the Report and Recommendation (ECF No. 43) of Chief Magistrate Judge Lenihan, dated February 22, 2013, is adopted as the opinion of the Court, except as to those portions of the Report and Recommendation related to the disposition of the constructive discharge claim asserted in Count I, and the retaliation claim asserted in Count III, which portions are not adopted by the Court for the following reasons.

The Court concurs fully with the Chief Magistrate Judge's exposition of the applicable Circuit precedent relative to the doctrines of equitable tolling, *see* ECF No. 43 at 15 and continuing violation, *see id.* at 26, in the context of a Title VII claim filed beyond the 300-day limitations period set forth at 42 U.S.C. § 706. The Chief Magistrate Judge recommended dismissal of the constructive discharge claim in Count I and the retaliation claim in Count III on limitations grounds on the basis that Plaintiff's Title VII Charge was not filed with the EEOC until well after the statutory 300-day charge filing period had expired, and that neither the equitable tolling nor "continuing violation" doctrines would spare those claims from dismissal on timeliness grounds. The Chief Magistrate Judge concluded that the Complaint's allegations were not sufficient to permit a plausible inference that Defendants misled Plaintiff about the reason for her termination. She also concluded that the "continuing violation doctrine" did not save Plaintiff's referenced Count I and Count III claims because Plaintiff's alleged constructive discharge, the alleged retaliation, and the rehire of Brian McPeake were distinct and discrete acts.

While the Court agrees fully with the Report and Recommendation statements of the law as to those claims, it parts company with it by concluding that given all of the facts as "shown" in the Complaint, it is not "implausible" for *Twiqbal*[1] purposes that the Defendants'[2] rehire of the Plaintiff's husband Brian McPeake in February, 2011 was part and parcel of a single stream of unlawful discriminatory conduct alleged on the part of Defendants ("continuing violation"), and/or that Defendants actively concealed the planned intent to treat Plaintiff differently in regard to the terms and conditions of her employment on account of her sex or because she had opposed a practice made unlawful by Title VII ("equitable tolling").

Our Court of Appeals has directed that in applying the *Twiqbal* doctrine, the District Courts are not to hold the pleader to the standard of "probability," but only to one of "plausibility," and to consider all of the matters pled in the Complaint in making that analysis. *Arguetta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 74 (3d Cir. 2011); *Grier v. Klem*, 591 F.3d 672, 676 (3d Cir. 2010). Here, when the Complaint is viewed as a whole, the Plaintiff alleges a set of facts which *if* true[3] would render plausible timely claims which might otherwise be viewed (in this day and age) to be implausible. Plausibility is to be assessed by viewing the matters alleged *in toto*, and not on a point-by-point basis. What might be implausible when viewed in isolation may become quite plausible in context.

---

[1] *See RHJ Med. Ctr. Inc. v. City of DuBois*, 754 F. Supp. 2d 723, 730 (W.D. Pa. 2010) (creating a shorthand term for the application of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[2] Plaintiff was hired by Defendant Rehabcare Group Inc. ("Rehab") as a therapist. She was assigned by it to work at Greenery Specialty Care Center ("Greenery") in Canonsburg, Pennsylvania, which is operated by Defendant Fundamental. (ECF No. 43 at 3). McPeake was also hired by Rehabcare and assigned to Greenery. *Id.* For ease of reference, these entities are referred to as collectively "Defendants," since each moved to dismiss Counts I and III.

[3] And the Court is not saying that they are, only that it must treat them as such for purposes of considering the Motions before the Court.

According to Plaintiff's Complaint, the Defendants knew, directed and/or participated in the following events as ably recounted in the Report and Recommendation: Plaintiff's work assignments at the Greenery as an occupational therapist were determined by her husband, Brian McPeake. (ECF No. 1 at ¶ 35). Both Plaintiff and McPeake were assigned to work at Greenery. They both reported to Trish Miller, who worked at Rehab's offices in Wexford, Pennsylvania. (ECF No. 1 at ¶ 32). McPeake had an extended extramarital, intimate affair with a member of management (the Assistant Director of Nursing), an affair that was common knowledge in the workplace and was generally open and notorious. (ECF No. 1 at ¶¶ 35-42). McPeake and the object of his workplace affection socialized as a couple with the head administrator at the facility where Plaintiff and McPeake were employed. (ECF No. 1 at ¶¶ 37-38). Once the Plaintiff blew the whistle on the affair, McPeake essentially exiled Plaintiff in her work assignments by sending her to jobs far from home. (ECF No. 1 at ¶ 39). Plaintiff then went to the Human Resources Department and lodged a complaint about how she was being treated by McPeake as to work-related matters. Thereafter, Plaintiff's supervisor convened a meeting of Plaintiff's co-workers and the Plaintiff at which the affair and relationships among employees were openly discussed, which the Plaintiff found to be humiliating and embarrassing. (ECF No. 1 at ¶¶ 40, 47-48).

Plaintiff claims that McPeake then began a campaign of workplace harassment toward her, including false accusations of theft and his engaging in physically intimidating conduct toward Plaintiff. (ECF No. 1 at ¶ 49). Then, on March 28, 2010, McPeake brutally beat Plaintiff, fracturing her skull, an offense for which he was later criminally convicted.[4] (ECF No. 1 at ¶¶ 56-57). She was late for work the next day because she was obtaining treatment for those

---

[4] Plaintiff claims that two (2) months earlier, McPeake threatened her with a knife. (ECF No. 1 at ¶ 51).

injuries, along with a judicial Protection From Abuse ("PFA") Order. Plaintiff called her supervisor to advise her that she would be late to work that day and arrived on duty around noon, visibly bruised. (ECF No. 1 at ¶¶ 58-60).

Plaintiff heard from co-workers that a temporary therapist (her type of work) would be working at the facility for several weeks, if not longer. Plaintiff became concerned that this would affect her work opportunities and went to a supervisor, who convened a three-way conference call including Plaintiff and her department head. On that call, Plaintiff told them that she was late for work that day due to the attack by McPeake and her obtaining the PFA Order. Her supervisor responded by suspending her from duty without pay for tardiness, notwithstanding her visibly bruised condition, saying that she (the supervisor) could not be "judge and jury" as to any matters between Plaintiff and McPeake. Plaintiff told her supervisors that they were "victimizing" her, as McPeake had done, by suspending her. Plaintiff says that she was then told by management that she and McPeake could not be together or in the same building at work, and assumed that McPeake had also been removed from duty. (ECF No. 1 at ¶¶ 61-73).

Thereafter, Plaintiff wrote to the head of the Human Resources Department protesting her suspension and asking for its rescission and the payment of lost wages, but claims she got no response. Plaintiff says that four (4) days later she was told by management that there were no longer any locations for her work in the Pittsburgh area, and that she could continue to work but only in Maryland. Plaintiff also asserts that a senior administrator stated that she should not be "in the building" with "a black eye" and because she was unwilling to discuss her situation with McPeake with co-workers. When Plaintiff refused to go to work in Maryland, she resigned her position. (ECF No. 1 at ¶¶ 74-77).

Then, about ten months later, and with one day remaining in the 300-day Title VII charge filing limitations period, McPeake was returned to work as a case manager, criminal conviction in hand, but only after the employing-Defendant "polled" the staff as to "how they felt" about McPeake coming back to work. Plaintiff filed her EEOC administrative charge within 300 days of learning of McPeake's rehire, but beyond 300 days after she resigned. (ECF No. 1 at ¶¶ 78-85).

It may be that when McPeake was returned to work 299 days after Plaintiff resigned, it was an intriguing coincidence, or was due to a change of heart on the part of the Defendants, or was an action wholly unrelated to the events of March, 2010 involving the Plaintiff. Or, perhaps not. If the other significantly out-of-the-ordinary allegations[5] of the Plaintiff's Complaint do turn out to be true, it becomes notably more plausible that the Defendants had intended or contemplated bringing McPeake back to work at some point all along, and concealed and/or misrepresented that to the Plaintiff, which would toll the running of the statute of limitations on her constructive discharge and retaliation claims in Counts I and III. While such a longer-range plan on the part of one or more of the Defendants might appear in the ordinary course to be a matter only of conjecture and therefore implausible, on the other hand, if it turns out that the factual narrative pled by the Plaintiff is true, and the Defendants tolerated, directed or condoned

---

[5] What is it that is out-of-the-ordinary and why does that matter? At a minimum, it would seem that it would not be consistent with a scrupulous adherence to our Nation's fair employment practice laws to permit a male manager to use his work assignment power to treat his female spouse/subordinate as it is alleged McPeake treated Plaintiff, to suspend the female Plaintiff/spouse for being late due to her being severely beaten by her male spouse/supervisor, and to then, four (4) days after she complains to management about all that has gone on, tell her she can no longer work only a few miles from home, but must instead decamp to another state to remain employed. If discovery converts *those* plausible allegations into proven facts, then it would seem quite plausible that the involved employer(s) might not tell the subordinate female employee/Plaintiff how they are treating, or planning to treat, the male supervisor/husband more favorably.

8

the course of conduct as to Plaintiff's employment as it is alleged, then this Court cannot dismiss such a scheme as implausible at all.[6]

Layered on to this is the recognition that under applicable Circuit precedent, statute of limitations defenses should be resolved at the Motion to Dismiss stage only when the Complaint facially demonstrates that the claims alleged are time-barred, *see Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002), *cert. denied*, 540 U.S. 826 (2003); *Rycoline Prods., Inc. v. C&W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997), and the application of equitable tolling doctrines is rarely to be resolved at that procedural juncture. *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 301-02 (3d Cir. 2010). Further, Plaintiff has fulfilled her obligation to plausibly raise in her Complaint the application of that doctrine. *See id.* at 301; (ECF No. 1 at ¶¶ 82, 85, 94).

Only with discovery will the parties know the arc of the employer's actions, which is why the *Twiqbal* bar is not an insurmountable one, and the Plaintiff's constructive discharge and retaliation claims may proceed to discovery.[7] If the record developed there does not support her allegations, then no doctrine will spare those claims from the application of the statute of limitations at the summary judgment stage. If, on the other hand, they have merit, then under

---

[6] This is especially true when one considers that if there had been such a plan afoot, but the Plaintiff had filed her EEOC Charge before McPeake was re-hired, the Defendants would have argued with some persuasive force that her Title VII claims must be dismissed because Plaintiff could not show any differential treatment based on sex. If the Defendants were operating with such a plan in place, it would only come to fruition once he was visibly rehired, and that rehire would be the event which both demonstrated and completed the alleged unlawful differential treatment. Along the same lines, Plaintiff is being provided with the opportunity to amend to further flesh out her "failure to hire" claim, to set forth in greater detail her affirmations of a desire to be rehired. If it turns out that McPeake was returned to work without an open, on-the-record effort on his part to be returned, but the Defendants required such an affirmation on Plaintiff's part, then the issue of disparate treatment in those regards could also arise.

[7] While it is certainly true that discovery is not a license to conduct what is often condemned as a "fishing expedition," the *Twiqbal* principle is not intended to close the courthouse doors to claims that are plausibly pled as best they can be from the position the pleader finds themselves in. *Mayale-Eke v. Merrill-Lynch*, 754 F. Supp. 2d 372, 381-82 (D.R.I. 2010). After all, Plaintiff was not part of the employer's decision, after the assault by McPeake and her complaints about her treatment, to offer her work only in another state, or to rehire McPeake, so it is not surprising that she does not at this point know the inside baseball attendant to those management decisions. What is relevant is whether she has made a plausible showing that the Defendants violated Title VII, that she possess an otherwise viable claim, that she has plausibly pled the application of the relevant tolling doctrines, and that there is a

settled tolling/continuing violation law as explained by the Chief Magistrate Judge in her Report and Recommendation, they may advance.

*[signature]*

Mark R. Hornak
United States District Judge

Dated: April 10, 2013

cc:   All counsel of record (*Via Electronic Mail*)

---

reasonable expectation that discovery will reveal evidence of the necessary elements of proof that she must demonstrate. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).